**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ASTRAZENECA PHARMACEUTICALS LP** **PLAINTIFF**

**v.** **CAUSE NO. 1:24cv196-LG-BWR**

**LYNN FITCH, in her official capacity as the Attorney General of Mississippi** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, FINDING AS MOOT DEFENDANT'S MOTION TO EXCLUDE EXPERT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this lawsuit, Plaintiff AstraZeneca Pharmaceuticals LP ("AstraZeneca") challenges Mississippi's "Defending Affordable Prescription Drug Costs Act," which is commonly referred to as Mississippi H.B. 728 and codified at Miss. Code Ann. § 41-149-1 et seq. (hereafter referred to as "H.B. 728"). Mississippi has filed a [88] Motion to Exclude the Expert Report of Aaron Vandervelde and a [117] Motion for Summary Judgment. AstraZeneca has also filed a [94] Motion for Summary Judgment. The parties have fully briefed the Motions. Amici Curiae American Hospital Association, 340B Health, Mississippi Hospital Association, Rural Hospital Alliance, and American Society of Health-System Pharmacists have also submitted a [127] Brief in support of Mississippi's Motion for Summary Judgment.[1] After

[1] AstraZeneca relies on amicus curiae briefs filed by the United States Department of Justice in *AstraZeneca v. Weiser*, No. 25-1466 (10th Cir. Mar. 6, 2026), *PhRMA v. Neronha*, No. 26-1039 (1st Cir. Feb. 25, 2026), and *AbbVie Inc. v. Weiser*, No. 25-1439 (10th Cir. Feb. 25, 2026). As this Court noted in another case, an amicus brief filed in another court "is unpersuasive because the federal government's

reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Mississippi's Motion for Summary Judgment should be granted; Mississippi's Motion to Exclude Expert Report is moot; and AstraZeneca's Motion for Summary Judgment should be denied.[2]

**BACKGROUND**

In 1992, Congress created the 340B drug program, which is "superintended by the Health Resources and Services Administration (HRSA), a unit of the Department of Health and Human Services (HHS)." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 113 (2011). "The purpose of the 340B program was to enable the Department of Veterans Affairs ("DVA") and certain Federally-funded clinics to obtain lower prices on the drugs they provided to their patients." *Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312, 316 (D.S.C. 2023) (citing H.R. Rep. 102-384, 7). In addition, "Congress was not willing 'to continue to allow the DVA, Federally-funded clinics, and their patients to remain unprotected against manufacturer price increases.'" *Id.* (quoting H.R. Rep. 102-384, 11).

The 340B program requires drug manufacturers that wish to participate in

---

interpretation of legal questions regarding another state's statute in a different circuit carries little weight on this record." *See AbbVie Inc. v. Fitch*, No. 1:24-CV-184-HSO-BWR, 2026 WL 1587716, at *9 n.6 (S.D. Miss. June 3, 2026).

[2] The Court has conducted an independent jurisdictional inquiry and determined that it has jurisdiction over this case pursuant to 28 U.S.C. § 1331. *See Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("[E]ven if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction."); *see also AbbVie, Inc. v. Murrill*, 180 F.4th 747, 757 (5th Cir. 2026) (finding federal question jurisdiction in a similar case).

Medicaid and Medicare Part B to agree to sell certain outpatient drugs to "covered entities" at or below a specified ceiling price. 42 U.S.C. § 256b(a)(1).[3] "Covered entities" include "public hospitals and community health centers, many of them providers of safety-net services to the poor." *Astra USA, Inc.*, 563 U.S. at 113. These covered entities "perform valuable services for low-income and rural communities but have to rely on limited federal funding for support." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022). The 340B program helps these covered entities "turn a profit when insurance companies reimburse them at full price for drugs that they bought at the 340B discount[,]" and "it enables them to give uninsured patients drugs at little or no cost." *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 699 (3d Cir. 2023); *see also Genesis Health Care, Inc.*, 701 F. Supp. 3d at 316 (quoting H.R. Rep. 102-384, 12) (explaining that Congress understood that the 340B program would "enable covered entities to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services").[4]

---

[3] The ceiling price of covered outpatient drugs is the average manufacturer price less the rebate the manufacturer provides to states. 42 U.S.C. § 256b(a)(1)–(2); 42 C.F.R. § 10.10.

[4] AstraZeneca claims that covered entities originally "passed on the below-market prices required by Section 340B . . . to the low-income and rural patients for whom they often care." Pl.'s Mem. [99] at 4. AstraZeneca has not proffered authority that actually supports this statement, and there is no indication that the 340B statute or its regulations ever required covered entities to pass savings on to patients. AstraZeneca merely cites a report in which its proposed expert expresses his "understanding that profiting from 340B purchased drugs is not consistent with the original intent of the 340B program." Pl.'s Mot., Ex. 1 [98-1] at 6. The proposed expert did not discuss whether savings were ever directly passed on to patients or utilized in other ways to improve patient care.

In 1996, HRSA recognized that "only a very small number of the 11,500 covered entities used in-house pharmacies (approximately 500)[.]" Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996). It determined that:

> It would defeat the purpose of the 340B program if these covered entities could not use their affiliated pharmacies in order to participate in the 340B program. Otherwise, they would be faced with the untenable dilemma of having either to expend precious resources to develop their own in-house pharmacies (which for many would be impossible) or forego participation in the program altogether. Neither option is within the interest of the covered entities, the patients they serve, or is consistent with the intent of the law.

*Id.* Thus, HHS issued guidance allowing each covered entity that did not maintain an in-house pharmacy to contract with one outside pharmacy. *Id.* at 43,555. HHS stated that "[c]overed entities could . . . use savings realized from participation in the program to help subsidize prescriptions for their lower income patients, increase the number of patients whom they can subsidize and expand services and formularies." *Id.* at 43,549. "While some [covered entities] may pass all or a significant part of the discount to their patients, others may set the price slightly higher than the actual acquisition cost plus a reasonable dispensing fee, using the savings to reach more eligible patients and provide more comprehensive services." *Id.* at 43,551. "Covered entities using contract pharmacies would still order and pay for the drugs, but they would be shipped directly to the pharmacies." *Sanofi Aventis*, 58 F.4th at 700.

In 2010, HRSA issued a Final Notice allowing covered entities "to use multiple pharmacy arrangements as long as they comply with guidance developed

to help ensure against diversion and duplicate discounts and the policies set forth regarding patient definition." Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010). HRSA also permitted covered entities to supplement their in-house pharmacies with contract pharmacies. *Id.* at 10,275. HRSA cautioned covered entities that "use of a contract pharmacy arrangement . . . does not lessen a covered entity's duty to ensure that the 340B program is being administered in compliance with the statute and HRSA guidelines." *Id.* at 10,273. "Auditable records must be maintained to demonstrate compliance with those requirements." *Id.* HRSA made this change because covered entities had "highlighted how their delivery of patient care would be enhanced with a multiple contract pharmacy option. According to [those] comments, some patients currently face transportation barriers or other obstacles that limit their ability to fill their prescriptions." *Id.* "The 2010 Guidance prompted a significant expansion in the section 340B program." *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 457 (D.C. Cir. 2024). The number of contract pharmacies used by 340B covered entities "increased twentyfold." *Sanofi Aventis*, 58 F.4th at 700.

In response to this expansion, drug manufacturers adopted policies that limited or prohibited covered entities from contracting with outside pharmacies for the distribution of 340B drugs to patients. *PhaRMA v. McClain*, 95 F.4th 1136, 1141–42 (8th Cir. 2024); *Sanofi Aventis U.S. LLC*, 58 F.4th at 700. According to the Third Circuit, the manufacturers were particularly concerned that the use of

contract pharmacies resulted in an increase in diversion and duplicate Medicaid discounts. *Id.* HHS attempted to counteract the manufacturers' new policies by releasing "an Advisory Opinion declaring that Section 340B unambiguously requires drug makers to deliver 340B drugs to an unlimited number of contract pharmacies." *Sanofi Aventis*, 58 F.4th at 701 (citing Advisory Op. 20-06 on Contract Pharmacies under the 340B Program, 2020 WL 11422965, at *1 (Dec. 30, 2020)). It also issued violation letters ordering drug manufacturers to rescind their policies limiting covered entities' use of contract pharmacies and to reimburse covered entities for any overcharges. *Id.*

When drug manufacturers filed lawsuits challenging the HHS Advisory Opinion and violation letters, the Court of Appeals for the District of Columbia Circuit found that

> section 340B merely requires manufacturers to propose to sell covered drugs to covered entities at or below a specified monetary amount. Section 340B is thus silent about delivery conditions . . . . [W]e think that this silence preserves—rather than abrogates—the ability of sellers to impose at least some delivery conditions.

*Johnson*, 102 F.4th at 460 (citing 42 U.S.C. § 256b(a)(1)). The District of Columbia Circuit "reject[ed] HRSA's position that section 340B prohibits drug manufacturers from imposing any conditions on the distribution of discounted drugs to covered entities." *Id.* at 459.

Similarly, the Third Circuit held that 340B does not require delivery to an unlimited number of contract pharmacies because the statutory text is silent as to delivery and the use of contract pharmacies. *Sanofi Aventis*, 58 F.4th at 703. The

Third Circuit held that the manufacturers' delivery restrictions did not violate 340B, and it enjoined "HHS from enforcing against them its reading of Section 340B as requiring delivery of discounted drugs to an unlimited number of contract pharmacies." *Id.* at 706. The court reasoned, "Legal duties do not spring from silence." *Id.* at 707.

In April 2024, the Mississippi Legislature enacted H.B. 728 in an effort to prevent drug manufacturers "from engaging in certain discriminatory actions relating to entities that are participating or authorized to participate in the federal 340B drug discount program." H.B. 728, 2024 Leg., 139th Sess. (Miss. 2024) (citation modified). This statute provides:

> (1) A manufacturer or distributor shall not deny, restrict, prohibit, or otherwise interfere with, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with a 340B entity and is authorized under such contract to receive and dispense 340B drugs on behalf of the covered entity unless such receipt is prohibited by the United States Department of Health and Human Services.
> (2) A manufacturer or distributor shall not interfere with a pharmacy contracted with a 340B entity.

Miss. Code Ann. § 41-149-7. Several other states have enacted similar statutes "to protect covered entities' partnerships with contract pharmacies, attempting to do by statute what HHS had done in its advisory opinion." *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 641 (5th Cir. 2025).

The Mississippi Legislature defined the term "340B drug" to mean "a drug that has been subject to any offer for reduced prices by a manufacturer pursuant to [340B] and is purchased by a covered entity as defined in [340B]." Miss. Code Ann.

§ 41-149-3(a). And the term "'340B entity' means an entity participating or authorized to participate in the federal 340B drug discount program, as described in [340B], including its pharmacy, or any pharmacy contracted with the participating entity *to dispense drugs purchased through the 340B drug discount program*." Miss. Code Ann. § 41-149-3(b) (emphasis added). "The commission of any act prohibited by [H.B. 728] is considered a violation of the Consumer Protection Act[.]" Miss. Code Ann. § 41-149-9 (citing Miss. Code Ann. § 75-24-1, et seq.). Finally, H.B. 728 provides in pertinent part:

> (1) Nothing in this chapter is to be construed or applied to be less restrictive than federal law for a person or entity regulated by this chapter.
> (2) Nothing in this chapter is to be construed or applied to be in conflict with any of the following:
>> (a) Applicable federal law and related regulations.
>> (b) Other laws of this state if the state law is compatible with applicable federal law.

Miss. Code Ann. § 41-149-11.

Drug manufacturer AstraZeneca filed this lawsuit seeking declaratory and injunctive relief against Mississippi's Attorney General.[5] It claims that H.B. 728 is preempted by the 340B program and federal patent law. It further asserts that H.B. 728 violates the Contracts Clause and the Takings Clause of the United States Constitution.[6]

---

[5] "[T]he *Ex parte Young* doctrine allows [lawsuits] for declaratory or injunctive relief against state officers in their official capacities." *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (citation modified).

[6] AstraZeneca has abandoned its claim filed pursuant to the Takings Clause of the Mississippi Constitution. Pl.'s Resp. Mem. [135] at 30. AstraZeneca has also clarified that it is not asserting a regulatory taking claim. *Id.*

In July 2024, AstraZeneca sought a preliminary injunction on its 340B preemption claim. This Court denied that motion. Mem. Op. & Order [36]. AstraZeneca and Mississippi have now filed Cross-Motions for Summary Judgment. Mississippi also filed a Daubert Motion concerning AstraZeneca's expert. Given the 340B program's silence on delivery and the use of contract pharmacies, this Court must determine whether the State of Mississippi can do what the 340B statute does not allow HHS to do—prohibit drug manufacturers from interfering with "the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy" that is contractually authorized "to receive and dispense 340B drugs on behalf of [a] covered entity[.]" *See* Miss. Code Ann. § 41-149-7(1).

While the parties were briefing the pending Motions in this case, the Fifth Circuit addressed that question. The court held:

> To treat a federal agency's want of statutory power as a ceiling on state power would invert the presumption against preemption: it would convert congressional silence into an implied prohibition on the States, the opposite of the clear and manifest statement that displacing historic police powers requires. Federal silence about what HHS may command says nothing about what [a State] may [command].

*AbbVie, Inc. v. Murrill*, 180 F.4th 747, 760 (5th Cir. 2026). The Fifth Circuit rejected the drug manufacturers' claim that 340B preempted a Louisiana statute and affirmed summary judgment in favor of the State of Louisiana. *Id.* at 753.

After briefing concluded in the present case, this Court issued a pertinent decision in a companion case. *See generally AbbVie Inc. v. Fitch*, No. 1:24-CV-184-HSO-BWR, 2026 WL 1587716 (S.D. Miss. June 3, 2026). In that case, as here, the plaintiff drug manufacturers presented discovery materials in an attempt to

demonstrate that 340B preempts H.B. 728. *Id.* at *5. The manufacturers argued that "preemption determinations depend on how a challenged law actually operates in practice." *Id.* at *3. This Court granted summary judgment in favor of Mississippi.[7] Against this backdrop, the Court must consider whether AstraZeneca has presented arguments, testimony, and/or exhibits that would require this Court to deviate from the decisions made by the Fifth Circuit in *AbbVie Inc. v. Murrill* and this Court in *AbbVie Inc. v. Fitch*.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.*

### I. PREEMPTION

#### A. PREEMPTION STANDARDS

The question whether federal law preempts a state statute is a question of law. *United States v. Texas*, 181 F.4th 548, 553 n.4 (5th Cir. 2026); *Abbvie Inc. v.*

---

[7] Although the parties to the present case submitted supplemental authority to the Court, they have not addressed the effect of this recent decision on their arguments.

*Fitch*, 2026 WL 1587716, at *3. The Fifth Circuit has explained:

> While federal pre-emption of state statutes is, of course, ultimately a question under the Supremacy Clause, analysis of pre-emption issues depends primarily on statutory and not constitutional interpretation, so it is appropriate that the federal pre-emption issue be resolved before the constitutional issue is addressed.

*Computer & Commc'ns Indus. Ass'n v. Paxton*, No. 24-50721, 2026 WL 2130729, at *11 (5th Cir. July 24, 2026) (quoting *City of Philadelphia v. New Jersey*, 430 U.S. 141, 14 (1977) (per curiam)). The party asserting federal preemption has the burden of persuasion. *AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004).

The Supremacy Clause grants Congress "the power to preempt state law," either explicitly or implicitly. U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Courts recognize two forms of implicit preemption—conflict preemption and field preemption. *AbbVie, Inc. v. Fitch*, 152 F.4th at 645. "The doctrine of federal preemption that arises out of the Supremacy Clause requires that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Crystal Clear Special Util. Dist. v. Jackson*, 142 F.4th 351, 363 (5th Cir. 2025). "In all these types of preemption, however, evidence of pre-emptive purpose must be sought in the text and structure of the federal provision at issue." *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 329 (5th Cir. 2025), *cert. denied*, No. 25-257, 2026 WL 1854999 (U.S. June 29, 2026) (citation modified).

"In determining whether a state law or regulation is preempted, Congress's

intent is the ultimate touchstone." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022) (citation modified). "Congress can indicate its preemptive intent either expressly, through a statute's plain language, or impliedly, through its structure and purpose." *Id.* (citation modified). "[P]reemption cannot depend on congressional intent in a vacuum, unrelated to the giving of meaning to an enacted statutory text[.]" *Deanda v. Becerra*, 96 F.4th 750, 762 (5th Cir. 2024).

Furthermore, "[p]re-emption is not a matter of semantics. A State may not evade the pre-emptive force of federal law by resorting to creative statutory interpretation or description at odds with the statute's intended operation and effect." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013). "In a pre-emption case, . . . a proper analysis requires consideration of what the state law in fact does, not how the litigant might choose to describe it." *Id.* at 637 (citation modified). Furthermore, "[c]ourts may not conduct a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives because such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023) (citation modified).

Here, the parties agree that the statutes at issue do not contain an express preemption provision. AstraZeneca makes clear that it is only asserting obstacle preemption, which is a form of conflict preemption *See AT&T Corp.*, 373 F.3d at 645 (listing the types of conflict preemption), and it does not claim that field preemption applies.

### B. Whether a Presumption Against Preemption Applies to H.B. 728

#### 1. Matters Traditionally Reserved to the States

"A presumption against preemption is applicable to areas of law traditionally reserved to the states." *Deanda*, 96 F.4th at 761 (citation modified). "Public health and consumer protection fall squarely within a State's historic police powers." *AbbVie, Inc. v. Murrill*, 180 F.4th at 758. "Where those interests are at stake, the assumption is that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (citation modified).

The Fifth Circuit held that a presumption against preemption applies to H.B. 728 because it regulates public health and consumer protection. *AbbVie, Inc. v. Fitch*, 152 F.4th at 645–48. The Fifth Circuit recently reaffirmed this finding in a case concerning a Louisiana statute that it described as "materially indistinguishable" from H.B. 728. *AbbVie, Inc. v. Murrill*, 180 F.4th at 758. In *Murrill*, the Fifth Circuit explained that the state statute "does not regulate the 340B Program itself. It regulates the distribution of drugs to patients and the role of pharmacies in this distribution." *Id.* at 758.

Since questions of statutory interpretation and preemption are questions of law, the discovery materials offered by AstraZeneca are inconsequential. *See AbbVie Inc. v. Fitch*, 2026 WL 1587716, at *4.[8] This Court is bound by the Fifth

[8] AstraZeneca claims that "[d]iscovery has shown that HB 728 is not actually aimed at public health or consumer protection; rather the law aims to help covered entities and contract pharmacies generate revenue." Pl.'s Mem. [99] at 14. However, the

Circuit's prior decision that the presumption against preemption applies to H.B. 728. *See AbbVie, Inc. v. Fitch*, 152 F.4th at 645–458.

**2. Alleged Discrimination Against Federal Contractors**

AstraZeneca argues that the presumption against preemption does not apply because H.B. 728 "discriminates against drug manufacturers who contract with the federal government, in violation of the well-recognized principle of intergovernmental immunity."[9] Pl.'s Resp. Mem. [135] at 2. However, the Fifth Circuit has already resolved this question when it held that a "virtually identical statute" does not target drug manufacturers because they voluntarily participate in the 340B Program. *See AbbVie, Inc. v. Murrill*, 180 F.4th at 758 n.38, 763. The Fifth Circuit explained that "Congress left delivery logistics and contract pharmacies unregulated in § 340B, and [the State] chose to fill that space." *Id.* at 758 n.38. AstraZeneca's argument that H.B. 728 discriminates against 340B manufacturers is not well taken. Therefore, the presumption against preemption applies to H.B. 728.

---

financial stability of covered entities is clearly related to public health, which is an area traditionally governed by state regulation. *See AbbVie v. Fitch*, 152 F.4th at 644 (citation modified) ("H.B. 728 was not enacted solely for the benefit of private parties, but rather furthers important public interests, like expanding needy patients' access to care and giving covered entities better ability to expand and improve their services.").

[9] This principle "prohibit[s] state laws that either regulate the United States directly or discriminate against the Federal Government or those with whom it deals (e.g., contractors)." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation modified). "[A] state law discriminates against the Federal Government or its contractors if it singles them out for less favorable treatment, . . . or if it regulates them unfavorably on some basis related to their governmental status[.]" *Id.* at 839 (citation modified).

### C. Whether Conflict Preemption Applies

"For a state law to be conflict preempted, a high threshold must be met." *Barrosse*, 70 F.4th at 320 (citation modified). The threshold is even higher where, as here, the presumption against preemption applies. *See AbbVie, Inc. v. Murrill*, 180 F.4th at 758 (citation modified) ("[T]he assumption is that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").

"Conflict preemption applies . . . where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *AbbVie, Inc. v. Murrill*, 180 F.4th at 760. Courts determine the sufficiency of an obstacle for preemption purposes "by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby*, 530 U.S. at 373. AstraZeneca claims that the intent of H.B. 728 is to obtain additional revenue for 340B covered entities. However, 340B has the same purpose. As one court explained, "The 340B Program, unlike Medicare and Medicaid, was designed for the direct benefit of healthcare providers rather than their patients." *AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266, 1270 (W.D. Okla. 2025). Furthermore, 340B "requires drug manufacturers to subsidize covered entities by forcing the drug manufacturers to sell deeply discounted drugs to those entities, who then turn around and sell them to their patients at full price and pocket the difference." *Id.* Since both 340B and H.B. 728 are aimed at generating revenue for covered entities, H.B. 728 does not obstruct the purposes of 340B. As explained in more detail below,

the 340B program accomplishes this by establishing a ceiling price for certain drugs, while H.B. 728 accomplishes this by prohibiting drug manufacturers from limiting the locations where those drugs can be distributed to the patients of covered entities.

Nevertheless, AstraZeneca argues that H.B. 728 is preempted because it "effectively expands" its obligation "to offer 340B pricing for a new set of transactions that Congress never included." Pl.'s Mem. [99] at 2. It claims that "Section 340B limits the category of sales for which manufacturers must offer discounted pricing[,] but H.B. 728 "forces manufacturers to offer the same discounted pricing for an additional category of sales (unlimited contract pharmacy sales) not required by Section 340B itself." *Id.* It contends:

> Even Mississippi does not dispute that the State may not regulate the price of drugs sold within the 340B program. Yet as the undisputed record shows, HB 728's "real effect" is to do just that—to restrict the price at which AstraZeneca's drugs must be offered.

*Id.* at 16. While the Fifth Circuit, Eighth Circuit, this Court, and several other district courts have rejected similar arguments, AstraZeneca attempts to distinguish those cases because they were not made on a full summary judgment record, which included discovery materials.[10] Here, AstraZeneca presents an expert report, examples of contracts between covered entities and pharmacies, and Rule

[10] As explained previously, after the parties finished briefing the pending Motions in this case, this Court addressed this same question in a companion case where the parties presented similar, but not identical, discovery, claims, and arguments. *See AbbVie Inc. v. Fitch*, 2026 WL 1587716, at *3 ("[T]he Court analyzes these claims to determine whether discovery has revealed that H.B. 728 is in fact preempted.").

30(b)(6) deposition testimony given by some covered entities. Its submissions concern the manner in which contract pharmacies and covered entities handle 340B transactions in Mississippi.

For example, AstraZeneca argues that its discovery proves that H.B. 728 "substantially increases manufacturers' costs of participating in the 340B program by requiring them to offer 340B discounts for unlimited contract pharmacy sales under state law [that] they are entitled to 'limit' under federal law." *Id.* at 25 (quoting *Sanofi Aventis*, 58 F.4th at 705). It further asserts that "HB 728 *does* increase the number of contract pharmacies at which AstraZeneca must offer 340B-priced drugs." Pl.'s Reply [135] at 15 (emphasis in original). Yet, AstraZeneca has failed to identified any provision in the 340B statute that limits the number of contract pharmacies that can accept 340B-priced drugs on behalf of a covered entity. In fact, "340B is silent on the delivery of 340B drugs[.]" *Novartis Pharms. Corp. v. Hanaway*, 180 F.4th 1097, 1113 (8th Cir. 2026). And "federal law neither prohibits nor requires the use of contract pharmacies, nor does federal law fix the number of contract pharmacies a covered entity may use to distribute 340B drugs on its behalf." *Id.*

As the Fifth Circuit has maintained, "[f]ederal silence about what HHS may command says nothing about what [a State] may." *AbbVie, Inc. v. Murrill*, 180 F.4th at 760. "To treat a federal agency's want of statutory power as a ceiling on state power would invert the presumption against preemption: it would convert congressional silence into an implied prohibition on the States, the opposite of the

clear and manifest statement that displacing historic police powers requires." *Id.* at 759–60. Therefore, AstraZeneca's argument, that 340B imposes limits on the number of transactions for which manufacturers must provide discounts, is unpersuasive.

AstraZeneca next asserts that other courts handling similar cases "have assumed, without analysis or an evidentiary record, that the state laws regulated 'delivery' rather than pricing[,] . . . ignoring the laws' actual 'operation and effect.'" Pl.'s Mem. [99] at 28 (citation modified) (quoting *Wos*, 568 U.S. at 636). However, the 340B program sets price-ceilings for certain drugs purchased by designated entities, while H.B. 728, by its plain language, only applies to "340B drugs" and "340B entities." *See AbbVie, Inc. v. Murrill*, 180 F.4th at 759; Miss. Code Ann. § 41-149-7(1). H.B. 728 provides that "340B drug" "means a drug that has been subject to any offer for reduced prices by a manufacturer pursuant to [340B] and is purchased by a covered entity as defined in [340B]." Miss. Code Ann. § 41-149-3(a) (emphasis added). Moreover, "340B entity" "means an entity participating or authorized to participate in the federal 340B drug discount program, as described in [340B], including its pharmacy, or any pharmacy contracted with the participating entity to dispense drugs purchased through the 340B drug discount program." Miss. Code Ann. § 41-149-3(b) (emphasis added). Essentially, H.B. 728 "does not regulate prices; it regulates conduct." S*ee AbbVie, Inc. v. Murrill*, 180 F.4th at 761. The discovery material presented by AstraZeneca has not changed this determination, so the argument is not well taken.

AstraZeneca also claims its discovery shows that H.B. 728 does not regulate delivery because "delivery (i.e., movement) of 340B-discounted drugs from the manufacturer to the wholesaler to the pharmacy is no different than that of any other drug." Pl.'s Mem. [99] at 16 (emphasis omitted). It argues that H.B. 728 regulates price because "price is the only thing that distinguishes 340B drugs from non-340B drugs." *Id.* at 17. However, 340B establishes the price of the drugs, and H.B. 728 requires manufacturers to deliver those drugs to locations agreed upon by covered entities and contract pharmacies. *See* Pl.'s Reply [135] at 12 ("AstraZeneca does not dispute that federal law sets 340B prices[.]"). H.B. 728 only prohibits manufacturers from limiting the locations where the patients of covered entities can agree to pick up the 340B drugs they purchase. These drugs would cost the same amount if they were picked up at a covered entity's in-house pharmacy. Therefore, AstraZeneca's argument comparing the handling of 340B drugs with that of non-340B drugs must be rejected.

AstraZeneca further asserts:

> The courts that have rejected 340B preemption claims, moreover, did not have the benefit of a factual record that addressed the actual operation of the 340B program under the predominant replenishment model. Their decisions accordingly were based on incorrect factual premises that "[c]overed entities purchase and maintain title to the 340-B discounted drugs," *PhRMA*, 95 F.4th at 1144, and that each contract pharmacy "becomes an agent of the covered entity," *id.* at 1142. As noted, discovery has proven those premises wrong. The Fifth Circuit has already acknowledged that "[i]f HB 728 works the way that" drug manufacturers like AstraZeneca "allege[] it does . . . it would undoubtedly be a problematic statute." *AbbVie*, 152 F.4th at 639. The record here shows that HB 728 *does* "work [that] way." It is not merely "problematic," but unconstitutional.

Pl.'s Mem. [99] at 29 (all alterations in original). But AstraZeneca replaced part of the Fifth Circuit's statement with an ellipsis. The complete quotation is: "If H.B. 728 works the way that AbbVie alleges it does—*allowing covered entities and contract pharmacies to flout Section 340B's diversion ban by improperly reselling discounted Section 340B drugs*—it would undoubtedly be a problematic statute." *See AbbVie, Inc. v. Fitch*, 152 F.4th at 639 (emphasis added).[11] Therefore, it appears the Fifth Circuit was only discussing diversion, not issues related to title or agency, when it stated that H.B. 728 might be problematic. In its Reply, AstraZeneca concedes that it "has never argued that HB 728 allows diversion or duplicate discounts." Pl.'s Reply [135] at 13.[12] Therefore, the Fifth Circuit's statement in *AbbVie v. Fitch* does not support AstraZeneca's argument that its discovery would change the Fifth Circuit's opinion on whether 340B preempts H.B. 728.

AstraZeneca's arguments related to title and agency are also misplaced because the Fifth and Eighth Circuits were citing statements and requirements that HRSA included in its 1996 Notice and 2020 HRSA Advisory Opinion when they discussed title and agency in *AbbVie v. Murrill*, *AbbVie v. Fitch*, and *PhRMA v. McClain*. In other words, the courts were discussing 340B, not H.B. 728. Since

---

[11] 340B's diversion ban provides, "With respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B).

[12] AstraZeneca also does not argue that H.B. 728 "*causes* duplicate discounting or diversion" in violation of 340B. Pl.'s Reply [135] at 13 (emphasis added).

AstraZeneca states that it "did not bring this case to challenge the use of contract pharmacies, the replenishment model, or any other feature of the 340B program," AstraZeneca's arguments concerning title and agency are red herrings.

In addition, AstraZeneca's arguments related to title, agency, and other provisions in the contracts between covered entities and pharmacies are not pertinent to the question presented in this case, which is whether H.B. 728 conflicts with or creates an obstacle to the fulfillment of the purposes of the 340B program. In other words, the question of whether the covered entities' contracts comply with H.B. 728, or even 340B, is not before this Court. This is particularly true because H.B. 728 does not allow or require covered entities to violate the 340B requirements, and it does not dictate the manner in which covered entities interact with contract pharmacies with respect to agency relationships, title to drugs, treatment of uninsured patients, timing of purchase, or payment.

For this same reason, the manner in which covered entities choose to interact with contract pharmacies is not relevant to the question of whether H.B. 728 is focused on price or delivery. To the extent AstraZeneca may be concerned that Mississippi covered entities are not actually purchasing the drugs or they are reselling the drugs to contract pharmacies, the drugs in those transactions would not be "340B drugs" under the plain language of H.B. 728. *See* Miss. Code Ann. § 41-149-3(a) (providing the definition of "340B drug" under H.B. 728). As a result, the provisions included in covered entities' contracts with pharmacies do not impact the question whether 340B preempts H.B. 728.

AstraZeneca also claims that its discovery "shows that Mississippi's proffered justifications for [enacting H.B. 728] are false" and "that the 340B program is not a program that directly provides reduced prices for patients, or even a program where savings are passed on to patients." Pl.'s Reply [135] at 13. These observations do not establish the existence of any conflict between the language, effect, or intention of the two statutes.

In the alternative, AstraZeneca claims that 340B preempts H.B. 728 even if H.B. 728 regulates delivery because:

> There is no meaningful difference between the burden imposed by a statute requiring the sale of goods to identified buyers at a specified price ("You must sell me a car for $1"), and a statute mandating delivery of the same goods at that same price to the same buyers ("You may not deny me delivery of a $1-priced car."). Either way, the seller must make a car available for only $1.

Pl.'s Mem. [99] at 28. AstraZeneca contends that H.B. 728 requires it to "make costly discounts available in circumstances where such discounts otherwise would not be required[,]" regardless of whether the Mississippi statute regulates delivery or price. *Id.* at 29. In support of this argument, AstraZeneca relies on the opinions expressed by the 30(b)(6) designees of some Mississippi covered entities that H.B. 728's purpose is to generate savings or revenue for those entities. AstraZeneca claims that this revenue is extracted from drug manufacturers, which "'skew[s]' the 'delicate balance of statutory objectives' that underlies the 340B program." *Id.* (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348, 353 (2001)).[13]

---

[13] Importantly, the presumption against preemption did not apply in *Buckman*. See 531 U.S. at 347.

Once again, AstraZeneca has not demonstrated that H.B. 728 interferes with the policies or intent of 340B. In fact, it appears that H.B. 728 actually "assists in fulfilling the purpose of 340B." *See PhRMA v. McClain*, 95 F.4th at 1145 (discussing a similar statute). AstraZeneca's alternative argument concerning delivery is not well taken.

Finally, AstraZeneca argues that conflict preemption applies because H.B. 728 "establishes a parallel state enforcement regime, one that encroaches on the federal government's authority to set and define federal enforcement priorities." Pl.'s Mem. [99] at 29. The Fifth Circuit opinion that rejected this argument is binding on this Court. *See AbbVie, Inc. v. Murrill*, 180 F.4th at 760 (explaining that the federal and state enforcement "regimes operate in distinct spheres"). Furthermore, AstraZeneca's discovery has not changed the fact that 340B set the price of the drugs purchased by covered entities, and H.B. 728 pertains to the distribution of those same drugs. AstraZeneca's argument concerning H.B. 728's enforcement provision is not well taken.

As a result, AstraZeneca has not demonstrated that 340B preempts H.B. 728. This is particularly true because, as explained previously, the presumption against preemption applies in this circumstance. *See AbbVie, Inc. v. Fitch*, 152 F.4th at 645–46 (citation modified) ("In keeping with this presumption, when there is doubt about preemption, the tie goes to the state.").

### D. WHETHER H.B. 728 IS PREEMPTED BY FEDERAL PATENT LAW

AstraZeneca argues that H.B. 728 is preempted by federal patent law

because it "functions to limit 'the pecuniary rewards stemming from the patent right.'" Pl.'s Reply [135] at 19 (quoting *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1372 (Fed. Cir. 2007)). It also claims that "340B caps prices with respect to a limited set of sales involving covered entities," but H.B. 728 requires it "to offer its patented drugs at 340B-discounted prices, rather than market prices, for unlimited contract pharmacy sales." Pl.'s Mem. [99] at 31. As explained previously, the 340B statute does not impose limits on the use of contract pharmacies; rather the statute is silent on that front.

In addition, this Court has previously determined that H.B. 728 does not conflict with federal patent law because it "does not purport to lower prices on any drugs not already discounted under Section 340B." *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 753 (S.D. Miss. 2024), *aff'd*, No. 24-60342, 2026 WL 963504 (5th Cir. Apr. 9, 2026); *see also AstraZeneca Pharms. LP v. Weiser*, No. 25-CV-02685-PAB-STV, 2025 WL 3653161, at *10 (D. Colo. Dec. 17, 2025) (holding that a similar Colorado statute "does not cap the price of patented drugs—Section 340B does.").

Furthermore, "[a]ny allegations concerning the ability of AstraZeneca to profit from its patent due to covered entities utilizing a greater number of contract pharmacies . . . do not stem from interference with the patent right itself and separately have a remedy under the federal 340B Program." *AbbVie, Inc. v. Jackley*, 2026 WL 2280929, at *22. As a result, AstraZeneca's patent law preemption arguments are not well taken.

## II. WHETHER H.B. 728 VIOLATES THE CONTRACTS CLAUSE

The Contracts Clause of the United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Thus, the Contracts Clause "limits a State's power to disrupt contractual relationships[.]" *AbbVie, Inc. v. Murrill*, 180 F.4th at 764.

"Drug manufacturers opt into the 340B Program by signing a form Pharmaceutical Pricing Agreement (PPA) used nationwide." *Astra USA, Inc.*, 563 U.S. at 113. "PPAs are not transactional, bargained-for contracts. They are uniform agreements that recite the responsibilities § 340B imposes, respectively, on drug manufacturers and the Secretary of HHS. Manufacturers' eligibility to participate in State Medicaid programs is conditioned on their entry into PPAs for covered drugs purchased by 340B entities." *Id.*; 42 U.S.C. § 256b(a).

AstraZeneca argues that H.B. 728 substantially interferes with its PPA because "AstraZeneca signed its PPA with the expectation that it would be required to provide 340B discounts *only* for a limited category of transactions directly involving covered entities themselves, and it entered the PPA in reliance on that expectation." Pl.'s Mem. [99] at 33 (emphasis in original). It further asserts, "The fact that 340B sales are heavily regulated by the federal government does not create any expectation they would be regulated *by Mississippi*." *Id.* at 35 (emphasis in original).

However, the Fifth Circuit has held that Louisiana's "virtually identical" statute "does not alter the terms, rights, or obligations of AstraZeneca's PPA with

the federal government." *AbbVie, Inc. v. Murrill*, 180 F.4th at 765. It noted that AstraZeneca should not be surprised that states are regulating the delivery of 340B drugs because AstraZeneca operates "within a heavily regulated industry in which state and federal oversight have long coexisted." *Id.* at 766. The Fifth Circuit further reasoned that:

> [t]he absence of delivery terms in the PPAs is dispositive. Because delivery logistics were never part of the federal pricing agreements, a covered entity's decision to use a contract pharmacy—and [the state statute's] requirement that manufacturers not interfere with that choice—does not alter the contractual bargain between AstraZeneca and the federal government.

*Id.* at 765.

The discovery presented by AstraZeneca in this case does not warrant deviation from this Fifth Circuit precedent because it does not support a finding that H.B. 728 alters the terms of the PPA between AstraZeneca and the federal government. Mississippi is entitled to summary judgment on AstraZeneca's Contracts Clause claim.

**III. WHETHER H.B. 728 VIOLATES THE TAKINGS CLAUSE**

"When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *AbbVie, Inc. v. Murrill*, 180 F.4th at 762. The Fifth Circuit previously held:

> AbbVie has not shown that H.B. 728 effectuates a physical taking of AbbVie's property. The record indicates that H.B. 728 does not impose on drug manufacturers a positive obligation to directly transfer or sell their drugs to anyone. Nor does it require them to sell larger quantities of their drugs at discounted prices than Section 340B

> requires and thereby deprive them of sales at full market price. Under H.B. 728, AbbVie still receives payment of the full discounted amounts to which it is entitled under Section 340B. H.B. 728 simply imposes on drug manufacturers a negative obligation of non-interference with covered entities' arrangements with contract pharmacies, by preventing them from refusing to sell Section 340B drugs to covered entities that have arrangements with contract pharmacies and from restricting what covered entities can do with Section 340B drugs after they have purchased them.

*AbbVie, Inc. v. Fitch*, 152 F.4th at 643. The discovery AstraZeneca has presented does not affect this finding. Mississippi is entitled to summary judgment as to AstraZeneca's Takings claim pursuant to Fifth Circuit precedent.

## IV. MISSISSIPPI'S [88] MOTION TO EXCLUDE EXPERT REPORT

Mississippi asks the Court to exclude an expert report that AstraZeneca submitted in support of its request for summary judgment. For the reasons stated in the preemption section of this Memorandum Opinion and Order, the Court finds that the expert report does not provide a basis for granting summary judgment in favor of AstraZeneca. Mississippi's Motion to Exclude Report is denied as moot.

## CONCLUSION

The Court's focus in this case is the language and intent of 340B and H.B. 728, not testimony and evidence related to the manner in which entities operate under those statutes. H.B. 728 only applies to drugs that covered entities purchase through the 340B drug discount program. Miss. Code Ann. § 41-149-3; Miss. Code Ann. § 41-149-7. The 340B statute has previously established the price of those drugs.

In the opinion of the Court, AstraZeneca has failed to expose any conflict between 340B and H.B. 728. In addition, the Mississippi statute does not expand the scope of the 340B statute. H.B. 728 is not preempted by federal law, nor does it violate the Contracts Clause or the Takings Clause of the United States Constitution. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Mississippi Attorney General Lynn Fitch's [88] Motion to Exclude Expert Report of Aaron Vandervelde is **MOOT**.

**IT IS FURTHER ORDERED AND ADJUDGED** that AstraZeneca Pharmaceuticals LP's [94] Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Mississippi Attorney General Lynn Fitch's [117] Motion for Summary Judgment is **GRANTED**. AstraZeneca Pharmaceuticals LP's claims are **DISMISSED WITH PREJUDICE**. The Court will enter a separate judgment as required by Fed. R. Civ. P. 58(a).

**SO ORDERED AND ADJUDGED** this the 21st day of August, 2026.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE